IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASHLEY E. BRISCOE,

        Plaintiff,

                                          3:10-cv-00119-PK

                                          FINDINGS AND

v.                                        RECOMMENDATION

MICHAEL J. ASTRUE,

        Defendant.

PAPAK, Magistrate Judge:

       This action was filed against defendant Michael A. Astrue, Commissioner of Social Security, by plaintiff Dayle M. Wilson on February 3, 2010. Briscoe sought review of the Commissioner's decision finding her not disabled for purposes of entitlement to Disability Insurance Benefits. On March 14, 2011, I recommended that the Commissioner's decision be reversed and remanded for a finding of disability and an award of benefits, provided that all additional eligibility requirements for benefits were met. On May 5, 2011, Judge Brown adopted

Page 1 - FINDINGS AND RECOMMENDATION

my recommendation. No EAJA attorney fees were applied for or awarded. Now before the court is Briscoe's unopposed motion (#27) for approval of payment to Briscoe's counsel of $4,556.25 out of Briscoe's retroactive benefits award, pursuant to 42 U.S.C. § 406(b). I have considered the parties' briefs and all of the evidence in the record. For the reasons set forth below, Briscoe's motion should be granted, and payment to Briscoe's counsel of $4,556.25 out of Briscoe's past-due benefits award should be approved.

## ANALYSIS

Pursuant to 42 U.S.C. § 406(b), Briscoe moves for approval of payment of attorney fees to her counsel in an amount equal to approximately 11% of her retroactive benefits award. Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A). By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee. *See id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must be approved by the court following analysis of its reasonableness before it may be paid. *See* 42 U.S.C. § 406(b)(1)(A).

Page 2 - FINDINGS AND RECOMMENDATION

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes. *See Gisbrecht*, 535 U.S. at 801-802. Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id.* at 807. It is the claimant's counsel's burden to establish the reasonableness of the calculated fee. *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved." *Id.* at 808. The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* The court specified that "the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.*, *citing Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (*en banc*).

The Ninth Circuit addressed the *Gisbrecht* reasonableness analysis in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (*en banc*). The *Crawford* court reviewed the consolidated appeals of three different actions in which district courts reduced Section 406(b) fees from the amounts requested. In the first of these, claimant Clara Crawford was represented by attorney Brian

Page 3 - FINDINGS AND RECOMMENDATION

Shapiro. *See Crawford*, 586 F.3d at 1144. The Administration initially denied Crawford's application for benefits, but following litigation, ultimately awarded her $123,891.20 in past-due benefits. *See id.* at 1145. Although Shapiro and Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee, Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits, representing an amount 3.55 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that Shapiro's lodestar calculations were correct. *See id.* However, the district court found that Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants (as opposed to data regarding the success rate of Social Security claimants generally) and because Crawford's attorneys' skill and experience were already reflected in the lodestar figure. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

In the second action of the consolidated appeal, claimant Ruby Washington was represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration initially denied Washington's application for benefits, but following litigation, awarded $76,041.00 in retroactive benefits. *See id.* Although Cho and Washington had entered into a contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only $11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the

Page 4 - FINDINGS AND RECOMMENDATION

amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146. However, as for Crawford, the district court found that Cho had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants, because Washington's attorneys' skill and experience were already reflected in the lodestar figure, and because Cho had not been required to do much work to obtain benefits on Washington's behalf. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases, the Administration initially denied Trejo's application for benefits, but following litigation, awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had entered into a contingency fee agreement that provided for a 25% contingency fee, Haley requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Haley had caused no unnecessary delay and that her representation had been excellent, and that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time and 1.4 hours of claimed attorney time had been improperly attributed to the federal action. *See*

Page 5 - FINDINGS AND RECOMMENDATION

*id.* However, as for Crawford and Washington, the district court found that Haley had not met her burden to show that the requested fee was reasonable, because she had not presented evidence of her own firm's success rate in representing Social Security claimants, because Trejo's attorneys' skill and experience were already reflected in the lodestar figure, and because Haley had not presented evidence that Haley's firm had been precluded from accepting other work in consequence of Haley's representation of Trejo. *See id.* The court ruled, without explanation, that a 100% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See id.*

The *Crawford* majority characterized the district courts' decisions as impermissibly beginning with the lodestar calculation and determining a reasonable fee award by applying enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements and applying any appropriate reductions to the calculated contingency fees to arrive at reasonable fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of substandard performance or dilatory conduct by the claimants' attorneys, and that the requested fees were not "excessively large in relation to the benefits achieved." *See id.* at 1151. On the basis of these findings, the *Crawford* majority found that the requested fees – each of which was less than the fee provided for in the applicable contingency fee agreement – were reasonable in each case, and therefore reversed each district court's decision with instructions to award the requested fees. *See id.* at 1151-1152.

As a separate and independently adequate ground for vacating the orders below, the *Crawford* court further noted the district courts' failure to explain the bases for the percentages they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* at

Page 6 - FINDINGS AND RECOMMENDATION

1152. The *Crawford* court also flatly rejected the district courts' reliance on the attorneys' failure to provide firm-specific historical success rates as a basis for reducing the requested fee awards, and suggested that the reasonableness of a fee award could be measured in part by reference to the risk counsel assumed by agreeing to take on a particular case, given the specific facts of that case. *See id.* at 1152-1153.

Here, the Commissioner initially rejected Briscoe's application for DIB benefits, only to award retroactive benefits following litigation. Briscoe provides evidence that those retroactive benefits were awarded in the total amount of $42,225.00. As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Briscoe entered into a contingency fee agreement with her counsel providing for payment of 25% of Briscoe's retroactive benefits to her counsel in the event retroactive benefits were awarded following litigation in federal court. Briscoe seeks only $4,556.25 in attorney fees in this case, amounting to approximately 11% of her retroactive benefits. It therefore now falls to me to assess whether $4,556.25, or 11% of the retroactive benefits award, constitutes reasonable compensation for Briscoe's counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

### A. Character of the Representation

#### 1. Quality of Attorney Performance

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, the evidentiary record does not suggest that Briscoe's counsel's performance was in any way substandard. No reduction in the Section 406(b) fee is warranted due to the character of the representation here.

Page 7 - FINDINGS AND RECOMMENDATION

### 2. Dilatoriness

A Section 406(b) award may properly be reduced if the claimant's attorney caused an excessive delay resulting in an undue accumulation of past-due benefits. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, counsel sought only one extension of time for 60 days because of health concerns, a full docket, and a scheduled vacation. This single delay was not excessive and I therefore do not reduce the requested fee based on dilatoriness.

### B. Proportionality of Benefits Awarded to Attorney Time Spent

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

Considered in isolation, the product of the lodestar calculation can at best be of extremely limited utility in assessing the reasonableness of a contingency fee. The lodestar method of calculating fees is designed for use where it is intended that an attorney be compensated strictly for time expended and not on the basis of results achieved, milestones reached, or any of the myriad other bases by which clients may permissibly compensate their legal representatives, and where the probability of nonpayment is both low and unrelated to the attorney's ultimate success or failure. By contrast, the method authorized under Section 406(b) is one designed to

Page 8 - FINDINGS AND RECOMMENDATION

compensate attorneys commensurately with results achieved. As a matter of logic, the fact (standing alone) that a fee calculated according to the lodestar method differs from a fee calculated according to a contingency fee agreement is uninformative as to whether the contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested, since that fee is always a maximum of 25% of the retroactive benefits award, and must necessarily address primarily the effective requested hourly rate that may be back-derived by dividing the putative contingency award (excluding applicable reductions) by the number of hours spent in pursuing it. Although that effective requested hourly rate cannot usefully be directly compared to a reasonable hourly fee to determine its proportionality, it is logically defensible to posit, at least in the abstract, that an effective requested hourly rate is not disproportionately high if it is less than or equal to the product of a reasonable hourly rate for non-contingent matters and the reciprocal of the pre-litigation probability that litigation would lead to a favorable result, based on the particular facts presented in a given case.[1] That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services. An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the

---

[1] Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400 where the probability of a favorable outcome was 25%, or one in four.

Page 9 - FINDINGS AND RECOMMENDATION

probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis and the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality: a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result. Necessarily, however, this metric leaves at least two open questions: how is pre-litigation risk to be determined? And by what proportion may an award overcompensate risk without becoming disproportionate?

Despite these unanswered questions, I conclude that the proposed metric is of at least potential utility in assessing the reasonableness of Section 406(b) fee awards under the current state of applicable case law. As the *Gisbrecht* court noted, the "district courts are accustomed to making reasonableness determinations in a wide variety of contexts," 535 U.S. at 808, and widespread adoption of the metric would permit the development of benchmark values for determining the proportionality of risk mitigation. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to the metric outlined above.

Page 10 - FINDINGS AND RECOMMENDATION

Briscoe provides documentary evidence of her counsel's time expenditures in this case, totaling 20.7 hours. To give effect to requested fee would thus yield an effective hourly rate of $220.10 (the quotient of $4,556.25 and 20.7 hours is $220 per hour).

Briscoe's counsel's current hourly rate for practice of law is $250 per hour. Moreover, I take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected. I further take judicial notice that the Oregon State Bar 2007 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2006. According to the 2007 Economic Survey, the median hourly rate charged by Portland-area attorneys practicing in "other" areas of private practice in 2006 was $222. In this litigation, since Briscoe's counsel's effective hourly rate is *less* than both counsel's normal hourly rate and the 2006 Portland-area median hourly rate for non-contingency representation, the requested fee is even reasonable under a loadstar calculation. The fee is all the more reasonable considering that claimant-unfavorable results occur in 64% of all Social Security court cases and that there was significant risk inherent in this case, where Briscoe alleged disability based on fibromyalgia. I conclude that compensation at an effective hourly rate of $220.10 would not disproportionately overcompensate Briscoe's counsel for the risk her Social Security claim presented. I therefore conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

C.      **Appropriate Fee**

For the foregoing reasons, I find that the requested fee equivalent to approximately 11% of Briscoe's retroactive benefits in this case is within the statutory limits provided in 29 U.S.C. §

Page 11 - FINDINGS AND RECOMMENDATION

406(b). Briscoe's motion for approval of Section 406(b) fees should therefore be granted, and Briscoe's counsel awarded $4,556.25 as a reasonable attorney's fee.

## CONCLUSION

For the reasons set forth above, I recommend that Briscoe's motion (#27) be granted, and that payment to Briscoe's counsel of $4,556.25 be approved.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 29th day of December, 2011.

／s／ Paul Papak
Honorable Paul Papak
United States Magistrate Judge